

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2008

# McDonald v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4493

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"McDonald v. Comm Social Security" (2008). *2008 Decisions.* Paper 477.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/477

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-4493

———————

MARCUS MCDONALD,

Appellant

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 06-cv-01546)
District Judge: Honorable Yvette Kane

———————

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2008

Before:   BARRY, AMBRO, and JORDAN, *Circuit Judges*.

(Filed: September 26, 2008)

———————

OPINION OF THE COURT

———————

JORDAN, *Circuit Judge*.

Marcus McDonald appeals the order of the United States District Court for the Middle District of Pennsylvania affirming the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. McDonald alleges that the District Court erred in finding that substantial evidence supported the Commissioner's decision that McDonald was not disabled from March 3, 2004 (his alleged disability onset date) through March 14, 2006 (the date of the decision by the Administrative Law Judge ("ALJ") denying benefits). Attacking the administrative decision underlying the District Court's opinion, McDonald alleges that the ALJ erred in determining that McDonald's impairments did not meet or equal the requirements in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listed Impairments"), and that the ALJ erred in determining that McDonald could make an adjustment to other work. For the following reasons, we will affirm.

I.      Background

Because we write primarily for the benefit of the parties, we set forth only those facts pertinent to the issues before us on appeal. McDonald filed an application for DIB and SSI on August 23, 2004, claiming that he stopped working on March 3, 2004, following a head injury. He sustained his injury when, as he was shopping, an employee at a Lowe's hardware store dropped a boxed, 45-pound toilet from a ladder, striking

2

McDonald's head, neck, and right shoulder, and cracking two of his teeth. McDonald

claimed that the ongoing pain, blackouts, dizziness, headaches, and back spasms resulting

from the injury, in addition to the tiredness caused by his pain medication, limited his

ability to work.

McDonald's application was initially denied.[1] He filed a timely request for a

hearing before an ALJ, and, following a hearing on February 6, 2006, the ALJ issued a

decision on March 14, 2006, finding that McDonald was not disabled under the Act and,

therefore, was not entitled to DIB or SSI.[2] McDonald appealed that decision to the

Appeals Council, which denied his request for review. Accordingly, the ALJ's decision

denying benefits was adopted as the Commissioner's final decision. *See* 20 C.F.R. §§

404.981, 416.1481. On appeal, the District Court affirmed the Commissioner's denial of

McDonald's claim. McDonald then timely appealed to this Court.

---

[1]According to the Commissioner, McDonald's application was evaluated according to a test program that eliminated the reconsideration step in the administrative review process. *See* 20 C.F.R. §§ 404.906(b)(4), 416.1406(b)(4). Accordingly, McDonald was notified that he had 60 days to ask for a hearing following the Commissioner's initial denial of his claim.

[2]Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical and mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be considered "disabled," an individual's "physical or mental impairment or impairments [must be] of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." 42 U.S.C. § 423(d)(2)(A).

II.  Discussion[3]

The Social Security Administration ("SSA") has established a five-step sequential evaluation process to determine whether a person is disabled under the Act.  *See Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).  At step one, the SSA will find that an individual is not disabled unless he demonstrates that he is not working at a "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the SSA will find no disability unless the individual shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the individual's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the individual successfully demonstrates that he has a severe impairment, the SSA determines at step three whether the impairment meets or equals one of the "Listed Impairments," a list of problems presumed severe enough by the SSA to render one disabled; if the impairment does, the individual qualifies as disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the individual's impairment is not on the list, the inquiry proceeds to step four and the SSA assesses whether the individual has the

---

[3]The District Court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We apply the same standard of review as the District Court: the Commissioner's findings of fact must be supported by substantial evidence.  *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003); *see* 42 U.S.C. §§ 405(g), 1383(c).  The "substantial evidence" standard of review requires us to review the whole record.  *Reefer*, 326 F.3d at 379.  In Social Security cases, we have defined "substantial evidence" as more than a mere scintilla.  "'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Smith v. California*, 637 F.2d 968, 970 (3d Cir. 1981)).

"residual functional capacity" to perform his previous work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The SSA will determine that the individual is not disabled unless he shows that he is unable to perform his previous work. If the individual satisfies step four, the fifth step requires the SSA to consider his residual functional capacity together with his "vocational factors" (the individual's age, education, and past work experience) to determine whether he is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). A significant number of jobs exist in the national economy if there are a significant number of jobs either in the region where the individual lives or in several regions in the country. 20 C.F.R. §§ 404.1560(c), 416.960(c).

In conducting the five-step evaluation, the ALJ in this case first found that McDonald was not gainfully employed. Second, she found that McDonald had impairments–post concussive syndrome, cervical and lumbar spine denervation, and back spasm–and that his impairments were severe. Third, the ALJ concluded that McDonald's impairments did not meet the specific criteria found in any of the Listed Impairments. Fourth, in consideration of the medical records, McDonald's symptoms, his testimony, his subjective complaints, his daily activities, and the hearing testimony of a vocational expert, the ALJ found that McDonald did not retain the residual functional capacity to perform the requirements of his past occupation. Fifth, in consideration of his residual functional capacity, age, education, work experience, and the vocational expert's testimony, the ALJ concluded that McDonald was capable of making a successful

5

adjustment to other work that existed in significant numbers in the national economy and was, therefore, not disabled.

    A.    *Evidentiary Basis for ALJ's Conclusion as to Listed Impairments*

McDonald first alleges that the ALJ erred in her conclusion that McDonald's impairments did not meet or equal Listed Impairments 1.04 or 12.02.[4]

The ALJ determined that the record failed to reveal the necessary diagnostic testing or physical findings to meet or equal Listed Impairment 1.04, which describes disorders of the spine.[5]  According to the ALJ, McDonald's magnetic resonance images

---

[4]The ALJ also found that McDonald's impairments did not meet or equal Listed Impairment 11.14.  McDonald does not dispute that determination.

[5]Disorders of the spine include herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral facture.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  The listing requires compromise of a nerve root (including the cauda equina) or the spinal cord with

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*

(MRIs) and x-rays were all "normal, negative or unremarkable" and his physical exam findings revealed a normal gait and negative straight leg raising. (A.R. at 13.)[6] There is substantial evidence in the record to support that determination. As the District Court noted, the medical record contains no evidence to confirm a compromised nerve root, a threshold requirement of Listed Impairment 1.04.[7] Although Dr. Leroy Pelicci, McDonald's neurologist, noted "nerve involvement" following an electromyography on May 17, 2004, a nearly contemporaneous MRI revealed "no significant compromise of the existing root." (A.R. at 218, 245.) Other MRIs failed to reveal significant abnormalities. Following almost a year of treatment, Dr. Pelicci ordered another MRI to explore the possibility of nerve root involvement. The MRI was normal, which left Dr. Pelicci "at a loss" to explain the diffuse symptomatology that McDonald was experiencing. Moreover, McDonald received chiropractic care from Dr. Mary Ann Hordesky, who noted that by August of 2004 McDonald had a negative straight leg raise test and that McDonald consistently responded favorably to care.

There is similarly substantial evidence to support the ALJ's finding that McDonald failed to meet or equal all the criteria of Listed Impairment 12.02, "Organic Mental Disorders."[8] We cannot agree with McDonald that his medical records and Dr. Pelicci's

---

[6]Citations to "A.R." are to the administrative record filed in this case.

[7]Nor does the record reveal evidence of a compromised spinal cord, the alternative threshold requirement of 1.04.

[8]Listed Impairment 12.02 defines "Organic Mental Disorders," in relevant part, as follows:

7

observations clearly show that McDonald's impairments satisfy the requirements set forth

---

> Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
> 4. Change in personality; or
> 5. Disturbance in mood; or
> 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
> ...
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support ... .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2006).

in that listing. To the contrary, McDonald testified that he is able to take care of his own personal hygiene, perform some household chores, shop with his fiancée and attend church regularly. Like the District Court, we are unable to find any evidence of extended decompensation in the record and only minimal evidence of difficulties in concentration, persistence or pace. McDonald refused anti-depressants, and, although Dr. Pelicci referred him to a psychologist, the record contains no evidence that McDonald pursued that line of treatment.

The District Court was therefore correct in concluding that the ALJ had substantial evidence to support its finding that McDonald's impairments did not meet or equal a listed impairment.

B.    *Evidentiary Basis for ALJ's Conclusion that McDonald Could Adjust to Other Work*

McDonald next alleges that the ALJ erred in determining that McDonald could make an adjustment to other work because the ALJ inadequately considered McDonald's residual functional capacity and vocational factors.

McDonald implicitly challenges the ALJ's conclusion that McDonald "has the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently, walk/stand 6 hours and sit 6 hours with a sit/stand option, with a bilateral overhead reaching limitation, [and to do a job that] does not require climbing ladders, avoids temperature extremes, noise, vibration, hazards and sudden light change and exposure and involves simple routine tasks." (A.R. at 16.) According to McDonald, the ALJ should

have given more weight to McDonald's testimony regarding his memory loss, headaches and pain in his neck and back.  An ALJ, however, must weigh testimony as to pain or other symptoms against objective medical evidence.[9]  The ALJ here found that McDonald's statements concerning the "intensity, duration and limiting effects of [his] symptoms were not entirely credible" because the record lacked any findings to support his claimed functional limitations.  (A.R. at 15.)

Our own review of the record reveals not only a similar lack of support for McDonald's complaints, but evidence to the contrary.  McDonald's primary care physician noted that, a few weeks after the injury, McDonald's dizziness and lightheadedness had resolved.  Regular physical therapy made the pain and headaches McDonald suffered "less frequent and intense."  (A.R. at 141.)  Chiropractic treatments regularly decreased his pain and increased his range of motion.  At his final recorded visit with Dr. Pelicci, the doctor noted that McDonald was "basically stable."   (A.R. at 230.) The objective evidence more than adequately supports the ALJ's residual functional capacity determination.

---

[9]The Act itself establishes that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged ... ."  42 U.S.C. § 423(5)(A).

McDonald challenges the ALJ's ultimate conclusion that he could make an adjustment to other work. He argues that his condition "should have forced the [ALJ] to conclude that the Plaintiff would be incapable of adjusting to another type of work." (Appellant's Br. at 16.) We are not unsympathetic, but he overstates his case. The hypothetical posed to the vocational expert adequately reflected all of McDonald's impairments that had support in the record, as well as McDonald's age and education. In light of that, the vocational expert confirmed that work McDonald could do was available in the regional economy. For example, in line with her finding that McDonald only had "moderate limitations with his ability to maintain concentration, persistence and pace," the ALJ included in her hypothetical that the individual be limited to "simple, routine tasks" and that he avoid noise extremes and bright or sudden light changes.[10] Because the hypothetical was adequate, the vocational expert's testimony regarding other work provided substantial evidence for the ALJ's conclusion. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

III.    Conclusion

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

[10]This case is thus distinguishable from *Ramirez*, where we held that a hypothetical requiring that the individual's work be limited to "simple one to two step tasks" was inadequate because it did not take into account that the claimant "*often* suffered from deficiencies in concentration, persistence, or pace." 372 F.3d at 554 (emphasis in original).