NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3366
_____

HENRY R. SCHMITS,
                              Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cv-01971)
District Judge: Honorable Dennis M. Cavanaugh


_____

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2010

Before: SLOVITER, BARRY and HARDIMAN, *Circuit Judges*.

(Filed: July 2, 2010)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Henry Schmits appeals the District Court's summary judgment affirming the decision of an Administrative Law Judge (ALJ) denying his claim for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). We will affirm.

I.

Because we write for the parties, we recount only the essential facts and procedural history.

The Commissioner considers applications for DIB and SSI in a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920. Schmits's application was denied at Step Five, when the ALJ found he could perform work as a surveillance system monitor. *See id.* §§ 404.1520(f), 416.920(a)(4)(v). Schmits timely sought review by the Appeals Council, which declined to exercise jurisdiction, and then in the District Court, which affirmed. Although his claim was denied at Step Five of the ALJ's analysis, Schmits claims the ALJ erred at Steps Two, Three, Four and Five.

Like the District Court, we review the ALJ's decision to determine whether it is supported by substantial evidence, 42 U.S.C. § 405(g), which is "less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

2

At Step Two, the ALJ found Schmits had four "severe" impairments: lumbar and right elbow impairments, anxiety disorder and social phobia. Schmits claims the ALJ should have found additional physical and psychological impairments.

As for physical problems, Schmits claims the ALJ should have found him severely impaired based on his complaints of pain in the right hand, right fingers and right knee as well as his complaints of vision problems. The ALJ did not credit those complaints because they were not established by medical evidence, including signs, symptoms and laboratory findings; rather, they were purportedly established by symptoms alone, which are insufficient. 20 C.F.R. §§ 404.1508, 416.908. Therefore, the ALJ found that those injuries did not significantly limit Schmits's physical ability to perform basic work activities. 20 C.F.R. § 404.1521(a).

Schmits's claims of right hand and right finger impairments are supported solely by claims of pain and a statement in the medical record that "[m]aking a tight fist exacerbates the pain." But pain alone is insufficient to create a severe impairment. Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or

mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).").

The only medical evidence supporting Schmits's alleged right knee pain is Dr. Sicherman's diagnosis of post traumatic chondromalacia with associated pain and limited motion.[1] However, the only medical test conducted on the knee was an x-ray showing it to be within normal limits. All of the remaining evidence in the medical notes, including evidence of pain and limited motion, comes from Schmits's subjective complaints. Without a medical basis for those complaints, the ALJ was not required to give them great weight. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

Schmits also argues that the ALJ did not properly weigh his complaints of vision problems. But the ALJ's conclusion is supported by substantial medical evidence because the doctors concluded that Schmits's vision was within normal limits and that he did not have limited depth perception or field of vision.

Although consulting examiner Dr. Obrotka found Schmits suffered from photophobia, State agency physician Dr. Spitz opined that Schmits's photophobia could be cured by tinted glasses. Schmits claims we must rely on Dr. Obrotka's conclusion because he treated Schmits, whereas Dr. Spitz did not. Although it is true that the opinion of an examining physician is entitled to great weight, Dr. Obrotka never opined as to

---

[1] Based on those medical facts, Dr. Sicherman concluded that Schmits would be disabled for an indefinite time. But such determinations are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

4

whether tinted glasses could help Schmits's problem, so there is no conflict between his assessment and that of Dr. Spitz. Therefore, the ALJ did not err in relying on Dr. Spitz's conclusion that tinted glasses could rectify Schmits's photophobia. That leaves Schmits without any medical basis for his claimed vision impairment, so the ALJ's determination was supported by substantial evidence. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

As for his psychological problems, Schmits claims the ALJ erred when the ALJ found he did not suffer from agoraphobia. Agoraphobia is not mentioned anywhere in Schmits's medical records, however; it is only referenced once, in a letter to the ALJ from Dr. Papowitz, Schmits's treating psychologist. But that conclusory statement, without any basis or explanation, is not sufficient to establish a severe impairment. Moreover, as we shall explain, Dr. Papowitz rarely saw Schmits and did not have a basis to conclude that he suffered from agoraphobia. Therefore, the ALJ's conclusion that Schmits did not suffer from agoraphobia is supported by substantial evidence.

III.

At Step Three, the ALJ found that none of Schmits's impairments was medically equivalent to any of the Listings. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that Schmits suffered from only mild limitations in his ability to engage in daily living and to maintain concentration, persistence and pace. 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ also found that Schmits suffered from only moderate limitations in

his ability to maintain social functioning and did not suffer from repeated episodes of decompensation. *Id.*

The ALJ explicitly rejected Dr. Papowitz's assessment that Schmits suffered "[e]xtreme" limitations in all of those functions as well as "[c]ontinual" episodes of decompensation, all of which resulted in the "complete inability to function outside of [Schmits's] home." If credited, those findings would have satisfied Listing 12.06. But the ALJ rejected Dr. Papowitz's opinion because it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2).

Dr. Papowitz examined Schmits only twice a year for pain management and admitted that his diagnosis was based solely on Schmits's subjective complaints. Thirteen years of treatment translated into less than seven pages of notes and Dr. Papowitz's assessment was submitted without explanation on a check-the-box form. The ALJ asked Dr. Papowitz to explain the basis of his conclusion and clarify the details of the diagnosis, including when the extreme limitations started. But Dr. Papowitz's written response acknowledged that he could not articulate a medical basis for his conclusion, saying he "hardly know[s] how to reply" because he sees Schmits "briefly twice a year to prescribe medication" and "know[s] of his disability only from what he tells me." Therefore, Dr. Papowitz's conclusion was not supported by medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d)(3), and

the ALJ did not err in rejecting Dr. Papowitz's conclusion that Schmits was incapable of any social interaction.

Having properly rejected the assessment from the only treating psychologist, the ALJ was free to rely on the opinion of consultative psychologist Dr. Thimmaiah. After meeting with Schmits, Dr. Thimmaiah concluded that Schmits was capable of relating to others, was alert and oriented, and completed tasks that involved both concentration and memory. Additionally, Schmits testified that he regularly went to the supermarket, interacted with family members, and went out to a diner. Dr. Thimmaiah's opinion and Schmits's activities constitute substantial evidence to support the ALJ's conclusion that Schmits's social phobia did not meet the requirements of Listing 12.06.

Schmits also argues that the ALJ understated the severity of his lumbar and right elbow impairments. The ALJ found that the right elbow impairment was not as severe as any Listing and Schmits does not point to any contrary medical evidence. Although Schmits cites medical evidence showing inflammation and difficulty extending his elbow, those problems do not reach the severity of the Listings.

As for the lumbar impairment, the ALJ found it was not so severe as to preclude work because it did not include significant sensory motor loss or diminished range of motion. Schmits claims he suffered from nerve damage, which would constitute sensory motor loss and thereby make the impairment more severe, possibly even precluding work activity. But that claim is not supported by the medical evidence. Indeed, the only

reference to nerve damage is an MRI report listing "involvement of the right sided S1

nerve root," not significant nerve damage. Therefore, the ALJ did not err in finding that

Schmits's four impairments were not severe enough to meet the Listings.

IV.

At Step Four, the ALJ found Schmits had the residual functional capacity (RFC) to

"lift light objects and sit, stand and walk as needed but cannot engage in pushing and

pulling with the upper extremities or perform work involving frequent contact with

others." Schmits claims the ALJ should have found more severe limitations. The ALJ's

RFC determination, however, flows from the prior findings.[2]

The only limitation that requires analysis is the one pertaining to Schmits's social

phobia—the inability to "perform work involving frequent contact with others." There is

substantial evidence to support the conclusion that Schmits cannot frequently interact

with others face-to-face, yet he retains the ability to interact with others periodically. For

example, Schmits can still go to the grocery store, he just goes at off times and leaves

quickly. Furthermore, all of Schmits's subjective complaints show that his social phobia

stems from being in the same room as other people at work, at parties, and at the grocery

store. There is no evidence that Schmits's social phobia stems from contacting others

---

[2] The ALJ also found that Schmits's daily activities belie his claims of total disability because he could still go grocery shopping, perform some chores in the garden and home, drive a car, and travel by bus. Additionally, Schmits continued interacting with family members and one friend. Because those findings are also supported by substantial evidence, the ALJ did not err in concluding that Schmits's subjective complaints do not preclude him from working.

over the telephone.  Hence, there is substantial evidence that Schmits's social phobia causes moderate limitations that prevent him from engaging in extensive face-to-face interaction with others.

V.

At Step Five, the ALJ heard testimony from a vocational expert (VE) and concluded that Schmits could work as a surveillance system monitor.  Schmits claims this conclusion was not based on substantial evidence.

The ALJ relied on the VE's opinion, in response to hypothetical questions, that someone with Schmits's impairments could work as a surveillance system monitor, as outlined in Dictionary of Occupational Titles (DOT) Code 379.367-010.  Schmits claims the VE's testimony cannot constitute substantial evidence because it did not "reflect all of [the] claimant's impairments that are supported by the record." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (internal quotation marks and citation omitted).  Nearly all of the impairments he cites, however, were rejected at Step Two.[3]

For example, Schmits claims he suffers from agoraphobia, rendering him unable to interact socially.  The VE testified that someone who cannot have any social interaction could not work and Schmits argues the ALJ should have based the Step Five

---

[3] The only exception is that Schmits does not argue that he suffered from an impairment requiring, or that any of his impairments require, him to nap two and a half hours a day.  Nevertheless, he claims the ALJ erred by failing to rely on the VE's testimony that someone who needs to nap two and a half hours a day cannot perform any jobs.  Because that limitation is not in Schmits's RFC, the ALJ did not need to consider it at Step Five.

9

determination on that response. But as we discussed previously, the ALJ did not err in discrediting Schmits's claim that he suffered from agoraphobia, so that limitation did not need to be included in the hypothetical question to the VE.

Additionally, all of Schmits's severe impairments—lumbar and right elbow impairments, anxiety disorder and social phobia, as well as their attendant limitations, *i.e.*, the ability to lift light objects, sit, stand and walk as needed, but not to push or pull with the upper extremities and not to perform work involving frequent contact with others—were part of the hypothetical posed to the VE. Considering all of those impairments and limitations, the VE concluded that such a person could work as a surveillance system monitor.

For example, the VE testified that one could work as a surveillance system monitor if he could have "low contact with the general public and coworkers" and explained that the job included no contact with the public as well as minimal contact with a supervisor. Schmits is socially impaired in face-to-face interactions. The ALJ relied on hypothetical questions that contain all of the face-to-face interactions of a surveillance system monitor.[4] Therefore, those hypothetical questions constitute substantial evidence and the ALJ did not err in relying on the VE's responses to conclude that Schmits could work as a

[4] The surveillance system monitor needs to talk and listen "[f]requently," meaning 1/3 to 2/3 of the time. But much of that talking and listening occurs over the phone, including calling police and other authorities to report disruptive activity. Because there is no evidence in the record that Schmits is socially impaired when talking on the phone, the hypothetical did not need to contain such interactions.

10

surveillance system monitor. *See Rutherford v. Barnhart*, 399 F.3d 546, 554-55 (3d Cir. 2005) (holding the hypothetical only needs to include the limitations that are supported by the evidence, not all of the alleged but unsupported limitations).

Schmits also claims the ALJ erred by failing to resolve a conflict between the VE's testimony and the DOT. *Rutherford*, 399 F3.d at 557 (holding the ALJ has a duty to inquire when the VE's testimony conflicts with the DOT). The DOT provides that a surveillance system monitor speaks and listens "[f]requently." DOT Code 379.367-010. According to Schmits, this conflicts with the VE's testimony that the job entails no contact with the public and minimal contact with a supervisor and co-workers. He claims the conflict is especially pronounced because his RFC precludes him from "perform[ing] work involving frequent contact with others." But as we explained previously, Schmits's RFC and the VE's testimony reflect his limitations with face-to-face interaction. The frequent talking and listening in the DOT, in contrast, is over the phone. Therefore, the VE's testimony did not conflict with the DOT and the ALJ did not err.

For the foregoing reasons we will affirm.