**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 10-2772

———

LAURA J. RUSSO,
Appellant

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 09-cv-0086)
District Judge: Honorable Gregory M. Sleet

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 21, 2011

Before: FUENTES, SMITH, and VAN ANTWERPEN, *Circuit Judges*

(Filed: April 6, 2011)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant, Laura J. Russo ("Russo"), challenges the denial of her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

Because the decision of the Administrative Law Judge ("ALJ") was supported by substantial evidence, we will affirm.

## I. FACTS

On February 16, 2006, Russo applied for DIB and SSI under the Social Security Act. Prior to filing her application, Russo had been employed as a data entry clerk. Russo's application claimed she had suffered from anxiety attacks, depression, stress, and schizophrenia since November 15, 2005. After applying for benefits, Russo was diagnosed with bipolar disorder and began taking prescribed medications. The state agency denied Russo's application initially and upon reconsideration. Russo requested an administrative hearing which was held on July 23, 2008. Counsel represented Russo at the hearing. Russo presented medical records and testified. Russo's mother and a vocational expert ("VE") also testified. We briefly summarize Russo's evidence here.

According to medical records, Russo saw Dr. Aydin Z. Bill, a psychiatrist, every month or two from 1998 through 2005. Dr. Bill's treatment notes indicate that Russo was more talkative and active in March, 2005 and feeling better in December, 2005. (*Appx*. at 33.) On February 9, 2006, Russo suffered "depression and suicidal ideas," checked into a hospital, received care, was discharged on February 14, 2006, and remained on outpatient care through February 22, 2006. (*Id*.) On August 1, 2006, Dr. Brian Simon, a licensed psychologist with the Delaware Disability Service ("DDS"), evaluated Russo, finding that she had fair attention and concentration, could perform serial calculations, had fair judgment, denied suicidal feelings, could follow simple directions, and got along with people. Dr. Simon ultimately diagnosed Russo with

"general anxiety disorder, major depressive disorder" and rated her Global Assessment of Functioning ("GAF") at 54.[1] (*Id*. at 6.) On September 20, 2006, a DDS Residual Functional Capacity ("RFC")[2] assessment determined that Russo had resolved her previous problems and could perform low stress, repetitive work. From March, 2007 through September, 2007, Dr. Bill's notes indicated that Russo was improving.

On November 21, 2007, Russo began seeing Dr. Suzy Nashed. Dr. Nashed initially assessed Russo's GAF at 55. (*Id*. at 34.) On December 26, 2007, Dr. Nashed noted that Russo was "doing a lot better." (*Id*. at 8.) On February 26, 2008, Dr. Nashed noted that although Russo's medications were helping, as of March 18, 2008, some residual psychosis remained. According to Dr. Nashed's records, on April 22, 2008, Russo expressed some suicidal ideation, but on May 9, 2008, Russo told Dr. Nashed she was "doing much better." (*Id*.) At the May 9, 2008 meeting, Dr. Nashed diagnosed Russo as bipolar. Finally, on June 23, 2008, Dr. Nashed "felt that Russo should receive social security benefits, based on her 'limited cognitive capacity,' as evidenced by her previous six year work history and her present inability to follow medication schedules." (*Id*. at 8-9.)

At the evidentiary hearing, in addition to the presentation of medical records, the ALJ heard testimony from Russo, Russo's mother, and a VE. Russo testified about her

---

[1] The GAF is a scale ranging from zero to one hundred used by clinicians to rate an individual's psychological, social, and occupational functioning. *See* AM. PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th Ed., Text Revision 2000).

[2] "Residual functional capacity" is defined as "the most [a claimant] can still do despite [] limitations." 20 C.F.R. § 416.945(a).

employment history, including her work as a data entry clerk at Chase Manhattan Bank for six years from December, 2000 until February, 2006, and as a daycare worker and as an employee at Wendy's in 2007. Russo discussed her medical treatment and medications. She also testified as to her daily activities, which include going to the gym, swimming, shopping, doing chores, running errands, watching television, reading, attending church, visiting the beach, and babysitting her nieces. (*Id*. at 33.) The ALJ found Russo "not credible" because of inconsistencies between Russo's testimony and Russo's written documentation. (*Id*.)

Russo's mother, Jane Woerner ("Woerner"), testified that Russo suffered anxiety and panic attacks, that Russo lived with her because Russo could not afford to live on her own, and that Russo's mental health had improved with medication. The VE testified that Russo could perform past relevant work as a data entry clerk and as a daycare worker, order filler, and fast food worker. The ALJ posed four hypothetical questions to the VE, all four of which premised a 31-year old individual who had a high school education, could read, write, use numbers, and had Russo's past work history. (*Id*. at 11.) Specifically, the third hypothetical question posited an individual who "could understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill." (*Id*.) The VE responded that such a person could "perform medium exertion, unskilled positions." (*Id*.)

On August 29, 2008, the ALJ denied Russo's application. On September 4, 2008, the Social Security Appeals Council denied Russo's request for review. On February 9, 2009, Russo appealed to the United States District Court for the District of Delaware, and

4

the parties cross-moved for summary judgment. On May 10, 2010, the District Court denied Russo's motion for summary judgment and granted the Commissioner's motion for summary judgment, thereby affirming the ALJ's decision. On June 11, 2010, Russo timely appealed to this Court.

## II. JURISDICTION AND STANDARD OF REVIEW

We have appellate jurisdiction pursuant to both 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We review the ALJ's decision, which is the final decision of the Commissioner. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). "[W]e must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

## III. ANALYSIS

### A. Administrative Framework and the ALJ's Decision

Under the Social Security Act, a "person who has a 'disability' is entitled to SSI payments . . . ." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). A "disability" is the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Ramirez*, 372 F.3d at 550. However, a claimant is potentially eligible for benefits *only* if the claimant's impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A); *Knepp*, 204 F.3d at 83.

To determine whether a claimant is disabled and thus entitled to benefits, the

Social Security Administration has promulgated a five-step process.  20 C.F.R. §§

404.1520, 416.920.  According to this process:

> First, the Commissioner must determine whether the claimant has engaged
> in substantial gainful activity since his alleged disability onset date.  [20
> C.F.R. §§ 404.1520(b), 416.920(b)].  If not, the Commissioner next
> determines whether the claimant has an impairment or combination of
> impairments that is severe.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant
> has a severe impairment, the Commissioner considers whether the
> impairment meets the criteria of an impairment listed in Appendix 1 of 20
> C.F.R. part 404, subpart P (the "Listings") or is equal to a listed
> impairment.  If so, the claimant is automatically eligible for benefits; if not,
> the Commissioner proceeds to step four.  *Id.* §§ 404.1520(d), 416.920(d).
> In step four, the Commissioner determines whether, despite the severe
> impairment, the claimant retains the residual functional capacity to perform
> his past relevant work.  *Id.* §§ 404.1520(e), (f), 416.920(e), (f).  The
> claimant bears the ultimate burden of establishing steps one through four.
> *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).  At step five, the
> burden of proof shifts to the Social Security Administration to show that the
> claimant is capable of performing other jobs existing in significant numbers
> in the national economy, considering the claimant's age, education, work
> experience, and residual functional capacity.  *Id.* at 551.

*Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007).

Here, at step one, the ALJ determined that Russo had engaged in substantial

gainful employment as a data entry clerk from the alleged disability onset date of

November 15, 2005 until February 2, 2006 and was thus not eligible for benefits prior to

February 3, 2006.  (*Appx.* at 30.); *see* 20 C.F.R. § 404.1520(a)(4)(i) (claimant not

disabled if engaging in substantial gainful activity).  However, because the ALJ then

found that Russo had not engaged in substantial gainful employment after February 2,

6

2006, the sequential evaluation would continue for the period from February 3, 2006 through August 29, 2008 (the date of the ALJ's decision). (*Appx.* at 30.) At step two, the ALJ found that Russo had "severe impairments": affective disorder and anxiety disorder. (*Id.* at 31.); *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Russo did not automatically qualify for benefits because Russo had no impairment or combination of impairments that met the criteria in the Listings. (*Appx.* at 31.); *see* 20 C.F.R. § 404.1520(d). At step four, the ALJ determined that Russo had the residual functional capacity to perform work that is "limited nonexertionally due to [Russo's] psychologically based symptoms . . . ." (*Appx.* at 31.) Accordingly, Russo "should avoid complex tasks and instructions as found in skilled work, but [Russo] is able to understand instructions adequately, and maintain persistence and pace adequately." (*Id.*) At step five, the ALJ concluded that Russo was capable of performing past relevant work as a data entry clerk, a day care provider, a fast food worker, and an order clerk. (*Id.* at 34.) After progressing through the five-step analysis, the ALJ ultimately determined that Russo had the RFC to perform past relevant work and, accordingly, had not been under a disability from November 15, 2005 through the date of decision on August 29, 2008. (*Id.* at 35.)

Our review of the ALJ's decision satisfies us that it was supported by substantial evidence. As required by regulation, the ALJ's RFC assessment considered all relevant evidence, including Russo's medical records, medical source opinions, and Russo's own testimony. *See* 20 C.F.R. § 404.1545(a). The evidence supported the ALJ's finding that Russo had the RFC to perform non-complex work. (*Appx.* at 32.) For example, Russo

testified that she was able to go to the gym and pool, drive, shop for groceries, do some chores, watch television, attend church, visit the beach, and babysit her nieces.  Notably, Russo continued to work as a data entry clerk until February, 2006 – *after* the alleged disability onset date of November, 2005.  *See* 20 C.F.R. § 404.1571 (work done during alleged disability period may show that claimant can work at substantial gainful activity).  The ALJ also considered the testimony of Russo's mother, who testified that although Russo cannot keep house, is tired, has difficulty following directions, and gets stressed at work, Russo can take care of herself, eat out, and was doing better on new medications.  Finally, the ALJ considered Russo's medical evidence.  Dr. Bill's notes indicated that Russo was improving prior to her episode of depression in February, 2006.  Russo's subsequent medical records show that Dr. Simon diagnosed her as suffering from "general anxiety disorder and major depressive disorder, recurrent, moderate, in full remission (provisional)," but that Russo had a GAF score of 54.  (*Appx.* at 34.)  Dr. Nashed rated Russo's GAF at 55 and noted improvement in Russo's condition from November, 2007 through June, 2008.  In the conclusion of her decision, the ALJ wrote that Russo's "impairments are severe in that they have more than a minimal affect [sic] on her ability to function, [but] they are not totally disabling and do not preclude the performance of all substantial gainful activity." (*Id*. at 34.)  Accordingly, the ALJ determined that, given her RFC, Russo could perform past relevant work as a data entry clerk.  (*Id*. at 34.)  We think substantial evidence supports this assessment.

## B. Russo's Alleged Errors

8

Nevertheless, Russo argues that substantial evidence did not support the ALJ's RFC determination because the ALJ: (1) relied exclusively on Russo's activities of daily living and accorded too much weight to these activities; (2) did not give appropriate weight to the medical opinion of Russo's treating physician, Dr. Nashed; and (3) posed deficient hypothetical questions to the VE. All three arguments fail.

Contrary to Russo's first argument, the ALJ did not rely exclusively on Russo's activities of daily living in assessing Russo's RFC. Regulations require that, in addition to activities of daily living, an ALJ also consider social functioning, concentration, persistence or pace, and episodes of decompensation when assessing a claimant's impairments. 20 C.F.R. § 404.1520a(c). Here, the ALJ explicitly considered all four of these categories when rating the severity of Russo's mental impairments. (*Appx*. at 32.) The ALJ's subsequent RFC analysis "reflect[ed] the degree of limitation" found in the mental function analysis, (*Appx*. at 32.), and considered, in detail, the impact of these limitations on Russo's RFC as required by 20 C.F.R. 404.1529(d)(4). Specifically, the ALJ discussed Russo's "mild restriction" in activities of daily living, noting that Russo drives, goes to Curves and the pool, does grocery shopping, does chores, goes to church and the beach, and babysits her nieces. (*Appx*. at 31, 33.). Similarly, with respect to Russo's "mild difficulties" in social functioning, the ALJ noted that Russo goes to the gym, the pool, the mall, church, and the beach. (*Id*.) Regarding Russo's "moderate difficulties" with concentration, persistence or pace, the ALJ noted Russo's difficulties with concentration but recognized that "on formal evaluation [Russo's] concentration and attention were fair." (*Id*. at 31.) Finally, the ALJ noted that while working at Chase,

9

Russo had "one to two episodes of decompensation." (*Id*.)  Thus the ALJ's RFC assessment considered all four categories of functioning.

Moreover, the ALJ's RFC assessment discussed Russo's functional limitations in detail and gave appropriate weight to Russo's activities of daily living.  Russo argues that the ALJ ignored the depression, anxiety, and lack of motivation she feels when pursuing these daily activities.  But the ALJ found that Russo's "statements concerning the intensity, persistence and limiting effects of these symptoms are *not credible* to the extent they are inconsistent with the residual functional capacity assessment . . . ." (*Id*. at 33 (emphasis added).)  Specifically, the ALJ found Russo's testimony not credible because it conflicted with her activities of daily living.  For example, Russo minimized her ability to do household chores, but her written documentation stated that she goes grocery shopping, does laundry and vacuums, and takes her dogs for walks.  (*Id*.)  Because the ALJ found that Russo lacked credibility, the ALJ's RFC assessment discounted Russo's alleged impairments.  *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (rejecting claimant's subjective testimony where ALJ found claims not credible).  Finally, as required, the ALJ provided a thorough analysis of which evidence she rejected and which evidence she credited in making her decision.  (*Appx*. at 33.); *see Schaudeck*, 181 F.3d at 433.  In light of the ALJ's analysis of Russo's activities of daily living and credibility determination, we reject Russo's first alleged error.

Russo's second alleged error is that the ALJ's RFC assessment failed to give appropriate weight to Dr. Nashed's medical opinion.  This argument also fails.  We have held that "an ALJ may not simply ignore the opinion of a competent, informed, treating

10

physician." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Similarly, when making a residual functional capacity determination, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). According to regulation, we will give a treating physician's opinion controlling weight if the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R. § 404.1527(d)(2). Indeed, "treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, if the treating physician's opinion is not given controlling weight, the ALJ applies the factors listed in 20 C.F.R. § 404.1527(d)(1)-(6) to determine the appropriate weight to give a medical opinion.[3] *See* 20 C.F.R. § 404.1527(d)(1). In short, "[i]n making a residual functional capacity determination, the ALJ must consider all evidence before him . . . . Although the ALJ may weigh the credibility of the evidence, he must give some

---

[3] These factors include: (1) examining relationship; (2)(i) length of treatment relationship and frequency of examination; (2)(ii) nature and extent of the treatment relationship; (3) degree to which evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors, such as any other information which would tend to support or contradict the medical opinion. *See* 20 C.F.R. § 404.1527(d)(1)-(6).

indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ considered Dr. Nashed's opinion but rejected it. Dr. Nashed opined that she "felt that Russo should receive social security benefits, based on her 'limited cognitive capacity,' as evidenced by her previous six year history and her inability to follow medication schedules." (*Appx*. at 8-9.) The ALJ did not accord controlling weight to Dr. Nashed's opinion because it was inconsistent with, and unsupported by, other substantial evidence in the case record, particularly Russo's list of daily activities.[4] *See* 20 C.F.R. § 404.1527(d)(3), (4), (6); *Plummer*, 186 F.3d at 429 ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). Upon Dr. Nashed's first examination of Russo in November, 2007, Dr. Nashed rated Russo's GAF at 55, "indicating moderate difficulty in social, occupational or school functioning." (*Appx*. at 34.) However, Dr. Nashed's GAF rating does not resolve whether Russo was "disabled" for purposes of the Social Security Act. Other record evidence about Russo's daily activities, including Russo's own testimony, also undermines Dr. Nashed's opinion. For example, Russo testified that her activities include driving, going to the gym and pool, grocery shopping, doing some chores, watching television, attending church, visiting the beach, and

---

[4] Although the ALJ could have explained this analysis more clearly, we nevertheless agree that objective record evidence contradicts Dr. Nashed's opinion. *See Plummer*, 186 F.3d at 429 (permitting ALJ to reject treating physician's opinion in the face of contradictory medical evidence and where ALJ explained reasons for discounting evidence).

12

babysitting her nieces. (*Id.* at 33.) Dr. Nashed noted that Russo was "doing a lot better" in December, 2007, that medication was helping in March, 2008, and that Russo was "doing much better" in May, 2008. (*Id.* at 8.) Finally, Dr. Nashed had been Russo's treating physician only since November, 2007. *See* 20 C.F.R. § 404.1527(d)(2)(i) (length of treatment relationship is a factor when considering appropriate weight to give medical opinion). Because this record evidence contradicts Dr. Nashed's opinion, the ALJ was not required to give that opinion controlling weight.[5] In short, the ALJ complied with her obligation to consider Dr. Nashed's opinion, and the ALJ explained her reasons for rejecting it. *Burnett*, 220 F.3d at 122; *Johnson*, 529 F.3d at 204. Accordingly, we find Russo's second claim of error unavailing.

We now turn to Russo's third alleged error: that the hypothetical questions posed by the ALJ to the VE were flawed because they did not contain all of Russo's restrictions. Accordingly, Russo argues that these deficient hypothetical questions cannot provide the basis for a proper RFC assessment. We disagree because the third hypothetical question posed by the ALJ to the VE conveyed all of Russo's limitations.

According to the Social Security regulations, "a vocational expert or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical

---

[5] We also note that Dr. Nashed's opinion whether Russo should receive disability benefits was not entitled to controlling weight because that determination is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) ("We recognize, of course, that a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue."). Dr. Nashed could properly opine on Russo's functional limitations but not the ultimate issue whether Russo was eligible for benefits.

impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 404.1560(b)(2). When posing hypothetical questions, "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, the ALJ determined at step three of the sequential evaluation process that Russo had the following impairments: (1) mild restriction in activities of daily living; (2) mild difficulties in social functioning; (3) moderate difficulties with concentration, persistence, or pace; and (4) one to two episodes of decompensation. (*Appx*. at 31.); *see* 20 C.F.R. § 404.1525 (explaining use of "Listings of Impairments"). Accordingly, the ALJ's hypothetical question must have reflected all four of these impairments. *See Rutherford*, 399 F.3d at 554.

All four hypothetical questions asked the VE to assume a thirty-one year old individual with a high school education who had the ability to read, write, and use numbers and who had Russo's past work history. (*Appx*. at 11.) The ALJ's third hypothetical question specifically asked the VE "to assume that the individual could understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill." (*Id*.)

We think the third hypothetical question accurately conveyed all of Russo's limitations. First, the hypothetical individual could "understand, remember, and carry out simple instructions," (*Id*.), which reflected Russo's mild restrictions in daily living and moderate difficulties in concentration. *See* 20 C.F.R., Part 404, Appendix 1, Listing 12.00(C)(1) ("Activities of daily living include adaptive activities . . . ."), (3) ("Concentration . . . refers to the ability to sustain focused attention and concentration

14

sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."). Second, the hypothetical individual would have "limited contact with the public and coworkers," (*Appx.* at 11.), which accounted for Russo's mild restrictions in social functioning. *See* Listing 12.00(C) ("Social functioning refers to [claimant's] capacity to interact . . . with other individuals."). Finally, the hypothetical individual "would not have a quota to fulfill," (*Appx.* at 11.), which accounts for Russo's moderate difficulties with concentration, persistence, pace, and decompensation episodes. *See* Listing 12.00(C)(4) ("Episodes of decompensation are exacerbations or temporary increases in symptoms . . accompanied by a loss of adaptive functioning . . . as manifested by difficulties in . . . maintaining concentration, persistence, or pace."). Therefore, the ALJ's third hypothetical was proper because it "accurately convey[ed] . . . all of [Russo's] credibly established limitations." *Rutherford*, 399 F.3d at 554. In response to this hypothetical question, the VE concluded that such an individual could "perform medium exertion, unskilled positions" and was not disabled. (*Appx.* at 11, 22.) Therefore, the ALJ's third hypothetical question to the VE accurately conveyed Russo's limitations, and the ALJ could consider the VE's response to this question when assessing Russo's claim.

In conclusion, while we think the ALJ's reasoning could have been clearer, we nevertheless think the ALJ's ruling was supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, we will affirm.