**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOUANNA STUBBS-DANIELSON,
          *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,
          *Defendant-Appellee.*

No. 07-35096

D.C. No.
CV-06-05212-JKA

OPINION

Appeal from the United States District Court
for the Western District of Washington
J. Kelley Arnold, Magistrate Judge, Presiding

Argued and Submitted
June 5, 2008—Seattle, Washington

Filed August 22, 2008

Before: Ferdinand F. Fernandez and Consuelo M. Callahan,
Circuit Judges, and Irma E. Gonzalez,* District Judge.

Opinion by Judge Gonzalez

---

*The Honorable Irma E. Gonzalez, Chief Judge of the United States
District Court for the Southern District of California, sitting by designa-
tion.

11439

## COUNSEL

D. James Tree, Attorney at Law, Yakima, Washington, for the plaintiff-appellant.

David Blume, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for the defendant-appellee.

## OPINION

GONZALEZ, Chief District Judge:

Appellant Louanna Stubbs-Danielson appeals the district court's decision affirming the Commissioner of Social Security's denial of her application for disability insurance benefits under the Social Security Act. We affirm.

## I.

Stubbs-Danielson first applied for Supplemental Security Income ("SSI") benefits in 1986. The Commissioner

approved her application and Stubbs-Danielson received SSI benefits from 1986 until roughly 1995, at which time her benefits were terminated as a result of her incarceration. She was in prison from roughly 1994 to 2000 and, upon release, she unsuccessfully applied for SSI benefits. Stubbs-Danielson protectively filed the present application in 2002.

In 2002, Stubbs-Danielson was 38 years old. She had a high school education, having taken special education classes and worked briefly as a telemarketer after her release from prison. Stubbs-Danielson based her application on claimed mental and physical limitations. Relevant here are evaluations conducted by two physicians and one psychologist.

In December 2002, Dr. Bryce A. McCollum evaluated Stubbs-Danielson and diagnosed her with borderline intellectual functioning and said she showed good persistence, but a slow pace in thought and action. Dr. McCollum observed that Stubbs-Danielson could follow three-step instructions. IQ testing resulted in scores that fell within the borderline range of intellectual functioning. Dr. McCollum noted Stubbs-Danielson functions in the low average range for verbal comprehension, perceptual organization, reporting the meaning of words, thinking abstractly, holding content in short term memory while sorting and reporting, copying symbols, reasoning with spatial relationships, and non-verbal reasoning.

In April 2003, Stubbs-Danielson injured her left wrist, left leg, and back in an automobile accident. X-rays showed degenerative changes in her lumbar spine. Later that month, Lawrence Neville, M.D., examined her and diagnosed a lumbar strain and left leg bruises. He concluded that her standing, walking, and sitting limitations would soon resolve.

In May 2003, Bruce Eather, Ph.D., a State agency reviewing psychologist noted Dr. McCollum's observation about claimant's slow pace and likewise indicated claimant has sev-

eral mental limitations. Dr. Eather stated claimant could perform simple work without public contact.

The Commissioner denied Stubbs-Danielson's 2002 application initially and on reconsideration. Stubbs-Danielson requested, and was granted, a hearing before an administrative law judge ("ALJ"). The ALJ took testimony from Stubbs-Danielson and a vocational expert. The ALJ subsequently rendered a decision denying the application in 2005.

The ALJ used the required five-step sequential framework to analyze whether Stubbs-Danielson was disabled. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that Stubbs-Danielson had not engaged in substantial gainful activity since the alleged disability onset date. At step two, the ALJ concluded that although some of the alleged impairments were not "severe" within the meaning of the applicable regulations, Stubbs-Danielson's lumbar degenerative disc disease, borderline intellectual functioning, adjustment disorder, and obesity were severe. At step three, the ALJ found that none of Stubbs-Danielson's conditions met or medically equaled a listed impairment in the regulations. Finding that Stubbs-Danielson's allegations regarding her limitations were not entirely credible, the ALJ determined that Stubbs-Danielson "retain[ed] the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public." At step four, based on the residual functional capacity assessment, the ALJ found that Stubbs-Danielson had no past relevant work. At step five, the ALJ relied on the Medical-Vocational Guidelines and the testimony of the vocational expert to conclude that Stubbs-Danielson could perform work as a "small products assembler," with 1,000 jobs available regionally and 100,000 available nationwide, and as a "packager/sorter," with 800 jobs available regionally and over 80,000 available nationwide. The ALJ, therefore, concluded that Stubbs-Danielson was not disabled.

The Social Security Appeals Council denied Stubbs-Danielson's request for review of the ALJ's decision, which

renders the ALJ's decision the Commissioner's final decision. The district court affirmed the ALJ's decision, and this appeal followed.

## II.

"We review de novo a district court's judgment upholding the denial of social security benefits. We may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotation marks omitted).

## III.

Stubbs-Danielson argues the ALJ: (1) failed to give any res judicata effect to her prior disability finding; (2) improperly rejected the opinions of her treating doctors and improperly found Stubbs-Danielson's testimony was not credible; and (3) failed to meet his burden of identifying specific jobs, available in significant numbers, which Stubbs-Danielson could perform despite her impairments.

## 1.  Preclusive Effect of Prior Disability Determination

As discussed above, Stubbs-Danielson received SSI benefits from 1986 until her incarceration in 1994, which resulted in termination of benefits. She argues the ALJ erred in failing to apply a presumption of disability based on this earlier receipt of benefits.

[1] In *Warren v. Bowen*, 804 F.2d 1120 (9th Cir. 1987) (per curiam), this court held that while the social security administrator may be foreclosed from reevaluating the disability determinations for current beneficiary recipients, the administrator is not required to presume that a previous disability has continued through a non-medically related termination of benefits. *Id.* at 1121. We examined then-existing regulations

which provided that an applicant whose benefits were terminated for a non-medical reason would not be required to resubmit evidence of his disability if the re-application came within one year of the prior termination. *Id.* (citing 20 C.F.R. § 416.1321(b) (1986)). We reasoned that such regulations supported the position that a presumption of disability should not extend to an applicant whose re-application came almost three years—i.e., more than one year—after a non-medical termination. *Id.*

**[2]** The existing regulations compel the same result in this case. The current regulations state that a claimant's benefits are suspended upon incarceration, and after 12 months of continuous suspension, benefits are terminated. *See* 20 C.F.R. §§ 416.1325, 416.1335. While the regulations provide for the resumption of suspended benefits upon an otherwise eligible recipient's release from custody, *see* 20 C.F.R. § 416.1325(b), they provide for no such reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of suspension. Accordingly, there is no basis for applying a presumption of continuing disability where, as here, a claimant's reapplication comes at least 6 years after a termination of benefits and more than 15 years after her previously successful application.

Our decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), does not compel a contrary result. In *Chavez*, we observed that principles of res judicata apply to administrative decisions regarding disability and impose an obligation on the claimant, in instances where a prior ALJ has made a finding of non-disability, to come forward with evidence of "changed circumstances" in order to overcome a presumption of continuing non-disability. *Id.* at 693. We also explained that a previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge. *Id.* at 694. Stubbs-Danielson has cited no

authority extending the principles of *Chavez*, which applied preclusive effect to a prior finding of non-disability, to the present context, an attempt to apply that same presumption to a prior finding of disability. Further, Stubbs-Danielson has not established that the ALJ improperly reconsidered prior findings, i.e., reconsidered prior findings based strictly on information already presented to the first judge. The entirety of the medical evaluations presented with respect to the present application were conducted after Stubbs-Danielson's 1984 initial disability determination. These evaluations necessarily presented new and material information not presented to the first ALJ.

## 2.   ALJ's Rejection of Certain Testimony

Stubbs-Danielson next argues the ALJ improperly rejected the opinions of the treating and examining doctors as well as Stubbs-Danielson's own subjective complaints. Stubbs-Danielson contends the ALJ failed to account for a number of significant functional limitations assessed by the doctors of record, including difficulties in maintaining pace, and failed to provide reasons for rejecting those doctors' opinions. She also asserts the ALJ excluded various postural limitations on bending, stooping, and crouching assessed by the Disability Determination Services physicians who reviewed the file.

### i.   *The ALJ's hypothetical question did not improperly reject the opinions of Stubbs-Danielson's doctors*

The ALJ's residual functional capacity ("RFC") finding was as follows: "the claimant retains the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public." Stubbs-Danielson argues the RFC finding does not capture the deficiency in pace and other mental limitations identified by Dr. Bryce McCollum and Dr. Bruce Eather.

We disagree. While Dr. McCollum's 2002 Intellectual Assessment observed Stubbs-Danielson had a "slow pace,

both with thinking and her actions" and his 2005 Mental Residual Functional Capacity Assessment ("2005 MRFCA") identified Stubbs-Danielson as "moderately limited" in her ability to "to perform at a consistent pace without an unreasonable number and length of rest periods" and "mildly limited" in several other mental functioning areas, Dr. McCollum did not assess whether Stubbs-Danielson could perform unskilled work on a sustained basis. Dr. Eather's report did. Dr. Eather's report, which also identified "a slow pace, both in thinking & actions" and several moderate limitations in other mental areas, ultimately concluded Stubbs-Danielson retained the ability to "carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading." While Mr. Wentz, a vocational expert, provided Stubbs-Danielson's representative his opinion that a person with anything more than a mild limitation with respect to pace would be precluded from employment except in a sheltered workshop, the ALJ refused to lend any weight to the assessment because it did not address Stubbs-Danielson's RFC and did not appear to be based on her individual record as a whole. This represents the type of credibility determination charged to the ALJ which we may not disturb where, as here, the evidence reasonably supports the ALJ's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004).

**[3]** The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to "simple tasks." This does not, as Stubbs-Danielson contends, constitute a rejection of Dr. McCollum's opinion. Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs-Danielson is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." As two of our sister circuits have recognized, an ALJ's assessment of a claimant ade-

quately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).

The Eighth Circuit's decision in *Howard* is directly on point. There, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace. The court noted the state psychologist's findings which concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. *See Howard*, 255 F.3d at 582. The medical evidence by Dr. Eather in the present case reflects the same conclusion.

**[4]** Accordingly, based on a review of the record, we conclude the ALJ's RFC finding properly incorporated the limitations identified by Dr. McCollum and Dr. Eather, including those related to pace and the other mental limitations regarding attention, concentration, and adaption. Further, to the extent the ALJ's RFC finding erroneously omitted Stubbs-Danielson's postural limitations (only occasional balancing, stooping, and climbing of ramps and stairs), any error was harmless since sedentary jobs require infrequent stooping,

balancing, crouching, or climbing. *See* Social Security Ruling ("SSR") 96-9p, at 8 (postural limitations related to climbing, balancing, crouching, would not erode the occupational base for a full range of unskilled sedentary work; most unskilled sedentary occupations require very little to occasional stooping).

We note and distinguish decisions of the Third Circuit in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), and the Seventh Circuit in *Kasarsky v. Barnhart*, 335 F.3d 539 (7th Cir. 2003) (per curiam), which found error where an ALJ's hypothetical failed to explicitly set forth deficiencies in pace.

In *Ramirez*, unlike the present case, medical testimony explicitly identified accommodation of a severe anxiety-related pace deficiency as a significant precondition for claimant's success in maintaining a full-time job. Specifically, the medical testimony recommended a close physical proximity between any potential employment location and the location of the claimant's children. *See Ramirez*, 372 F.3d at 555. The ALJ's hypothetical, however, did not include this limitation and instead only provided for a reasonable number of personal phone calls, which the Third Circuit found rendered the hypothetical incomplete. *See id.* The medical testimony in this case does not endorse a particularized accommodation like the one identified in *Ramirez*. As mentioned above, the only concrete limitations in this case were provided by Dr. Eather who, after considering Stubbs-Danielson's deficiencies in pace and other areas, found Stubbs-Danielson able to perform simple tasks.

In *Kasarsky*, the court's primary concern was the ALJ's failure to provide an explanation for the omission from the hypothetical question of the ALJ's earlier observation that the claimant suffered from "*frequent* deficiencies of concentration, persistence, or pace," *Kasarsky*, 335 F.3d at 544 (emphasis in original), an explanation which the court opined might exist. No such deficiency is present in the ALJ's opinion in

this case. The ALJ's opinion explains the omission of Stubbs-Danielson's moderate pace deficiencies from the RFC finding by reference to Dr. Eather's assessment.

> ii. *The ALJ did not err in rejecting Stubbs-Danielson's complaints*

[5] As for the claim that the ALJ improperly rejected Stubbs-Danielson's complaints without a subjective reason, this charge is without merit. The ALJ sufficiently explained his reasons for discrediting claimant's testimony when he explained as follows:

> The claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances.
>
> \* \* \*
>
> These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.

In addition, the medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found Stubbs-Danielson could perform a limited range of work—support the ALJ's credibility determination.

## 3.  ALJ's Step Five Analysis

Finally, Stubbs-Danielson argues the ALJ failed to meet his step five burden of identifying specific jobs which she could

perform for at least three reasons: (a) the ALJ's hypothetical was incomplete; (b) the ALJ did not identify specific jobs the claimant could perform; (c) the Vocational Expert's ("VE's") testimony was inconsistent with the Dictionary of Occupational Titles ("DICOT") and the ALJ's hypothetical question.

In arguing the ALJ's hypothetical was incomplete, Stubbs-Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.

**[6]** We similarly find Stubbs-Danielson's claim that the ALJ did not identify specific jobs unpersuasive. The VE testified that someone with Stubbs-Danielson's limitations could perform "small product assembly jobs at the sedentary level" and "packaging and sorting jobs" existing in significant numbers. Such a description is sufficiently specific to identify jobs that match Stubbs-Danielson's abilities. Indeed, several assembly or sorting occupations in the DICOT correspond to Stubbs-Danielson's limitations. *See* DICOT §§ 713.687-018, 734.687-018, 521.687-086.

Accordingly, we disagree with Stubbs-Danielson's claim that the VE's testimony was inconsistent with the DICOT and the ALJ hypothetical.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.