MEMORANDUM *
Robert Sherman appeals the denial of his application for supplemental security income under the Social Security Act. We “reverse only if the ALJ’s decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.” Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.2012). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]
Substantial evidence supports the ALJ’s adverse credibility determination. The ALJ offered “specific, clear and convincing reasons” for rejecting Sherman’s testimony about his limitations and pain to the extent that his testimony conflicted with the residual functional capacity as *748 sessment. Molina, 674 F.Bd at 1112 (internal quotation marks omitted). First, the ALJ noted Sherman’s sporadic work history before he filed for disability and the fact that his job rehabilitation services case worker closed his file for failure to cooperate and participate in job searching. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.2002).
Second, the ALJ relied on physicians’ observations that Sherman exhibited “self-limiting behaviors” and had “poor credibility.” Dr. Hurd, an examining physician, reported that Sherman “refused to do many of the exam maneuvers” and “used less than actual effort.” See id. (holding that a claimant’s failure “to give maximum or consistent effort during two physical capacity evaluations” supported the ALJ’s adverse credibility finding). He also observed Sherman perform multiple tasks that were inconsistent with his alleged limitations. See Carmickle v. Comm’r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) (“Contradiction with the medical record is a sufficient basis for rejecting the claimant’s subjective testimony.”). Dr. Hurd’s findings were consistent with other physicians’ observations. Dr. Goodell, a treating physician, said that Sherman’s “inability to cooperate/participate” and “unwillingness to participate in a physical exam” prevented her from testing his physical abilities. Sherman refused to bear weight during the exam. When Dr. Goodell left the room, however, he was able to climb up on the exam table to take a nap. Similarly, Dr. Mozer, an examining psychologist, described Sherman as “evasive” and commented on his failure to give a “valid effort.”
Third, the ALJ reasonably concluded that Sherman’s medical conditions did not limit his daily activities to the extent that he claimed. No doctor placed any restrictions on Sherman’s activities. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.2005) (“Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.”). Further, the ALJ found that Sherman’s daily marijuana use contributed to his lack of activity. Dr. Mozer opined that Sherman had “very marginal motivation” and is “basically doing what he wants to do (sit around and smoke pot).” The ALJ’s conclusion that marijuana use can impact daily activities, social functioning, and concentration is reasonable, so we must accept it. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.2008).
To the extent that the ALJ might have erred in relying on Sherman’s failure to get back surgery when he did not have money or insurance, see Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.2007), any error was harmless in light of the ALJ’s other findings that provide substantial evidence for the adverse credibility determination. See Carmickle, 533 F.3d at 1162.
Sherman argues that the ALJ rejected the opinions of his treating physicians. We disagree. The ALJ considered the opinions of Dr. Verby, Dr. Quenemon, Dr. Goodell, and Dr. Draper, and their opinions are consistent with the ALJ’s finding that Sherman has severe degenerative disc and joint disease in his back and osteoarthritis in his hands. The ALJ’s written decision was not required to discuss every piece of evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Sherman challenges the residual functional capacity assessment, but he has not shown how it is inconsistent with any physician’s opinion. No physician placed any restrictions on Sherman’s activities or diagnosed any physical impairments beyond those found by the ALJ.
*749 We also reject Sherman’s claim that the ALJ ignored the opinions of mental health care providers that he was depressed. After considering the evidence that Sherman claims was ignored, the ALJ ruled that Sherman’s alleged depression is “either not medically determinable, due to the lack of a formal diagnosis, or is non-severe.” The ALJ’s determination is supported by substantial evidence. Sherman was never diagnosed with depression. Dr. Mozer said that depression was “questionable” and he ruled it out of consideration by finding that if Sherman does have depression it is “mild,” “certainly not limiting,” and “a natural consequence of an empty lifestyle.” Likewise, Dr. Martin, a non-examining physician, testified that there was not much support in the record for depressive disorder. Sherman’s depression was not assessed by any other acceptable medical source. See 20 C.F.R. § 404.1513(a). The ALJ gave a “germane” reason, Molina, 674 F.3d at 1111, for rejecting Sherman’s other source evidence, noting that the therapist who assessed his global functioning assessment score did not diagnose depression. For the same reason, the ALJ properly discounted Sherman’s answers to mental health questionnaires.
Because the ALJ did not completely rule out the possibility that Sherman has mild depression, we assume without deciding that he was required to consider it in assessing Sherman’s residual functional capacity. “The ALJ is required to consider all of the limitations imposed by the claimant’s impairments, even those that are not severe.” Carmickle, 533 F.3d at 1164. In this case, however, Sherman has not shown that his alleged depression resulted in any functional limitations that the ALJ failed to consider. See Burch, 400 F.3d at 684.
Finally, we reject Sherman’s claim that the ALJ ignored the findings of Dr. McFarland, a state agency reviewing psychologist, and Dr. Mozer that he has difficulties maintaining concentration, persistence, and pace as a result of his anti-personality disorder. Sherman is correct that the residual functional capacity assessment does not specifically mention limitations in concentration, persistence, and pace. This omission, however, does not constitute reversible error. We held in Stubbs-Danielson v. Astrue, that a residual functional capacity assessment “adequately captures” a claimant’s limitations in concentration, persistence, and pace as long as the assessment is “consistent with restrictions identified in the medical testimony,” 539 F.3d 1169, 1174 (9th Cir.2008).
Here, the ALJ, like the one in Stubbs-Danielson, adopted the only “concrete restrictions” identified by Sherman’s physicians. See id. Both Dr. McFarland and Dr. Mozer concluded that Sherman is capable of unskilled work, despite his functional limitations. Dr. McFarland said that Sherman “would do best at work that does not require dealing with the public or working closely with others” but he is able to “understand, carry out and remember simple instructions,” and “respond appropriately to supervision, coworkers and work situations.” The ALJ gave Dr. McFarland’s opinion “significant weight” and noted that the residual functional capacity assessment is consistent with her findings. We agree. The assessment includes routine unskilled jobs with occasional to frequent new learning and excludes jobs that require constant dealing with the public, large groups of people, distracting situations, constant critical supervision, high constant focus requirements, and high constant stress requirements. To the extent that the ALJ might have erred by also including semi-skilled jobs, this error *750 was harmless because the ALJ found that Sherman is capable of performing unskilled jobs that exist in significant numbers in the national economy. See Molina, 674 F.3d at 1115 (“[A]n ALJ’s error is harmless where it is inconsequential to the ultimate nondisability determination.” (internal quotation marks omitted)).
The ALJ gave the vocational expert a hypothetical based on the residual functional capacity assessment. For the reasons discussed above, we conclude that the hypothetical properly included all of Sherman’s limitations that are supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. We order that the excerpts of record, filed under seal, be unsealed.