MEMORANDUM *
Gregory Mitchell seeks judicial review of the denial of his claim for disability benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
We review de novo the district court’s order affirming the Administrative Law Judge’s (“ALJ’s”) denial of Social Security Disability Insurance and Supplemental Security Income debility benefits, and we must independently determine whether the ALJ’s decision is free from legal error and supported by substantial evidence. See Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). “If the evidence can support either affirming or reversing the ALJ’s conclusion, we may not substitute our judgment for that of the ALJ.” Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.2006).
First, Mitchell contends that the ALJ erred by giving little weight to the second assessment of treating physician Dr. Park, which was prepared in January 2010 and suggested that Mitchell was totally disabled. The ALJ instead gave great weight to a January 2009 report prepared by Dr. Park concluding that Mitchell could perform sedentary work. He also gave: (1) great weight to the *311 opinion of consulting physician Dr. Merrill, who concluded that Mitchell could perform sedentary work with postural and environmental limitations; (2) limited weight to the opinions of treating physician Dr. Pollack and consulting physician Dr. Bernar-dez-Fu, who concluded that Mitchell could perform at least the full range of sedentary work; and (3) rejected the opinions of consulting physician Dr. Attaman and P.A. Wade because Dr. Attaman only saw Mitchell one time and P.A. Wade is not an “acceptable medical source under the regulations.”
“Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.” Smolen, 80 F.3d at 1285. But if a treating physician’s opinion is controverted, an ALJ can reject it by providing specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id.
The many experts who weighed in on Mitchell’s abilities did not agree. And, the ALJ sufficiently detailed his reasons for rejecting Dr. Park’s second opinion. The ALJ properly found that the second opinion was “inconsistent with the objective medical evidence of record, demonstrating improvement in several of the claimant’s impairments in 2009.” Specifically, the ALJ cited to exhibits showing that, throughout 2009, Mitchell’s blood pressure was improving, his sleep apnea was improving, he denied chest pain and related symptoms, and his sarcoidosis was stable.[1] Based on this evidence, it was “far from clear that [Mitchell’s] condition was progressively deteriorating.” See Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986). The ALJ thus properly relied on Dr. Park’s first opinion and the opinion of consulting physician Dr. Merrill.
Second, Mitchell contends that the ALJ improperly discredited his symptom testimony. When objective medical evidence establishes that the claimant suffers from an impairment that could reasonably produce the symptoms complained of, “an adverse credibility finding must be based on clear and convincing reasons” unless there is affirmative evidence of malingering. Carmickle v. Comm’r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir.2008) (internal quotation marks and quoting source omitted). Here, the ALJ provided clear and convincing reasons to support his conclusion that the “intensity, persistence and limiting effects” of Mitchell’s symptom testimony did not comport with the record. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir.2008) (quoting the ALJ decision in Stubbs-Danielson). The ALJ also noted that Mitchell’s testimony was inconsistent with the medical evidence showing improvement and with Mitchell’s reported daily activities, which include caring for his children and himself as well as driving, shopping, and riding a bicycle.
The ALJ additionally relied on the fact that Mitchell has not been compliant with his medical regimen. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir.2012). Although some of this non-compliance is explained by insurance issues, the balance of it, including Mitchell’s non-compliance with his diet and his failure to take hyper *312 tension medications as directed, support the adverse credibility finding.[2] The ALJ also noted “multiple inconsistent statements” between Mitchell’s testimony and his function report. And, although another ALJ may have excused these inconsistencies, they fairly contributed to the ALJ’s ultimate adverse credibility finding.
Third, Mitchell contends that the ALJ erred in finding that “a significant number of jobs exists that [the] claimant can perform, in light of [his residual functioning capacity], age, education, and work history.” This argument is waived because Mitchell did not raise it before the district court. Edlund v. Massanari, 253 F.3d 1152, 1158 n. 7 (9th Cir.2001). But the argument would not persuade us even if it could be. considered.
The Commissioner concedes that the ALJ erred in finding Mitchell capable of performing three jobs when two of them were semi-skilled and the ALJ did not make the necessary findings as to Mitchell’s ability to perform them. But the error was harmless because the semiconductor bonding job, which comports with Mitchell’s limitations, offers 1,300 regional positions and 41,000 national positions. Although we have “never set out a bright-line rule for what constitutes a ‘significant number’ of jobs” to support a finding that the claimant is not disabled, Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir.2012), other cases have concluded that fewer than 2,000 regional jobs is enough, see Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir.2002) (1,300 jobs in Oregon was enough); Barker v. Sec’y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir.1989) (1,266 regional jobs was enough).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. The dissent, which objects to the ALJ's rejection of Mitchell’s subjective symptom testimony, states that Mitchell’s sarcoidosis was “diagnosed” as progressive. But we read the record differently; the only use of the word "progressive” in Mitchell’s medical record appears prior to his official sarcoidosis diagnosis, when the doctor was merely prognosticating about the potential causes of Mitchell’s symptoms. And, even progressive diseases can be stabilized by treatment.

. The dissent characterizes Mitchell's repeated instances of non-compliance as explainable “slip-ups.” But we read the record, which is peppered with references to Mitchell’s failure to follow medical regimens, differently. As discussed in the dissent, some instances of Mitchell's non-compliance were explained by administrative or comfort issues. But several were not. The treatment notes indicate that Mitchell’s hypertension difficulties were exacerbated because he was "not taking medication as directed.” They also show that, beyond a failure to follow his recommended diet, Mitchell made his health worse by "increasfing] his intake of calories” and "gaining] some weight,” which made it “more difficult of [sic] him to ambulate and cause[d] more knee pain.”