**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUL 15 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHARLES ELMORE,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Commissioner
of Social Security,

Defendant - Appellee.

No. 13-35831

D.C. No. 6:11-cv-06363-PK

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Paul J. Papak II, Magistrate Judge, Presiding

Submitted July 10, 2015[**]
Portland, Oregon

Before: PREGERSON, N.R. SMITH, and OWENS, Circuit Judges.

Claimant Charles Elmore appeals the district court's judgment affirming the

Commissioner of Social Security's denial of his application for disability insurance

benefits under Title II of the Social Security Act. We have jurisdiction under 28

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

U.S.C. § 1291. We review the district court's decision de novo, *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), and we affirm.

1. Elmore first argues that the administrative law judge ("ALJ") erred in relying on evidence related to the Cooperative Disability Investigations Unit ("CDIU") investigation. In particular, Elmore asserts that the CDIU's use of a pretext interview was both inconsistent with the broad remedial purpose of the Social Security Act and the type of arbitrary government action that "shocks the conscience." This argument has no merit. The Social Security Act expressly authorizes the Commissioner to "conduct such investigations and other proceedings as the Commissioner may deem necessary or proper." 42 U.S.C. § 405(b)(1); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Disability Insurance and Supplemental Security Income programs are intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute."). And the tactics used in this case were neither "shocking" nor arbitrary. *See Shaw v. Winters*, 796 F.2d 1124, 1125 (9th Cir. 1986) ("Government agents are permitted to assume false identities in order to gain the confidence of their targets."). To the contrary, there is nothing nefarious about ensuring that only deserving claimants receive benefits.

2.      Elmore next argues that the ALJ improperly rejected or ignored the opinions of a number of medical providers: (1) Dr. Watkins; (2) Marilyn Morris; (3) Dr. Lewis; (4) Dr. Jutla and Dr. Sibell; (5) Joan Barry-Gertz; and (6) Dr. Duvall.  We address each below.

The ALJ rejected Dr. Watkins's opinion because it was "completely inconsistent with the objective findings of record."  This was proper.  This court has held that "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).[1]  Elmore is unable to point to any truly objective evidence that supports Dr. Watkins's opinion.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that "subjective complaints of pain" and the claimant's "subjective use" of a cane and wheelchair were not objective evidence).  And even if Dr. Watkins's observations of Elmore are considered objective, his opinion was still based "to a large extent" on Elmore's discredited complaints.

[1]  The ALJ relied on several other reasons beyond the CDIU investigation in concluding that Elmore was not credible.  Elmore, however, mentions these other reasons only briefly in a footnote and has thus waived any challenge to the ALJ's reliance on them.  *See Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996).

3

The ALJ did not specifically reject the opinions of Marilyn Morris, Dr. Lewis, or Dr. Jutla and Dr. Sibell. Nevertheless, Dr. Watkins reviewed the opinions of all of these providers and incorporated them into his own opinion. The ALJ thus implicitly rejected all of their opinions when it rejected Dr. Watkins's opinion. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ did not err by failing to discuss a medical review that "was based on" a report that the ALJ did discuss); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). The ALJ did not err in doing so. Like Dr. Watkins's opinion, the opinions of these providers were based largely on Elmore's discredited self-complaints. *See Tommasetti*, 533 F.3d at 1041; *see also Thomas*, 278 F.3d at 959 (recognizing that "self-limiting behaviors" can "impede accurate testing of a [claimant's] limitations").

The ALJ did not explicitly or implicitly reject the opinion of Joan Barry-Gertz. This was error, as "competent lay witness testimony '*cannot* be disregarded without comment.'" *Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100

4

F.3d 1462, 1467 (9th Cir. 1996)).  This error, however, was harmless.[2]  The reasoning that the ALJ provided for rejecting the opinions of Elmore's other providers "apply with equal force" to Barry-Gertz's opinion: they were all based on Elmore's discredited self-complaints.  *See Molina*, 674 F.3d at 1122.  We are thus "confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination."  *Id.*

The ALJ stated that it gave Dr. Duvall's opinion "great weight as it is consistent with the overall record."  Still, Elmore argues that the ALJ erred by failing to incorporate two aspects of his opinion into the residual functional capacity: (1) his statement that Elmore has issues sustaining attention and concentration; and (2) his statement that Elmore has symptoms of agoraphobia that keep him at home.  We disagree.  With respect to the first statement, the ALJ did not err by "translat[ing] . . . pace and mental limitations, into the only concrete restrictions available to him— [a] recommended restriction to 'simple tasks.'"  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  With respect to

---

[2]  Elmore's challenge to the harmless error rule as a violation of the *Chenery* rule is foreclosed by *Molina*, 674 F.3d at 1121 ("Giving full effect to the ALJ's reasoning does not require us to consider whether the undiscussed lay witness was credible or not credible.").

5

the second statement, Dr. Duvall did not assign "any specific limitations" based on Elmore's agoraphobia, so there was nothing for the ALJ to incorporate into the residual functional capacity. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

**AFFIRMED.**