NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

AUG 7 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JACQUELINE R. LARKIN,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.    18-35772

D.C. No. 2:17-cv-01689-BHS

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Submitted June 1, 2020**
Portland, Oregon

Before:  BERZON, COLLINS, and VANDYKE, Circuit Judges.

Memorandum joined by Judge COLLINS and Judge VANDYKE;
Dissent by Judge BERZON

Jacqueline R. Larkin ("Larkin") appeals the district court's judgment

affirming the Commissioner of Social Security's ("Commissioner") final decision

---

\*      This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral
argument.  *See* Fed. R. App. P. 34(a)(2).

to deny her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We affirm.

We review de novo the district court's decision affirming the denial of benefits. *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017). But our review is deferential, and we should reverse only if the Administrative Law Judge's ("ALJ") decision was not supported by substantial evidence in the record or if the ALJ applied the wrong legal standard. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

Larkin argues the district court's decision should be reversed for two reasons. First, because the ALJ erroneously "rejected" the opinions of Dr. Matthew Comrie and Dr. Eugene Kester by "ignoring" a material part of their limitation determination provided in their Mental Residual Functional Capacity Assessments ("MRFCA"). And second, because the ALJ failed to properly incorporate the physicians' determination that Larkin has "some limitations with keeping a regular workweek" into the ALJ's Residual Functional Capacity Assessment ("RFC"). These two arguments merge.[1] Larkin predicates her "rejection" argument on the ALJ's alleged

---

[1] Even if Larkin's two arguments were independent, her first argument would fail. The ALJ's written decision "considered the State evaluations" that Drs. Comrie and Kester performed, and acknowledged their findings that "claimant would have some limitation with keeping a regular workweek." Larkin is hard-pressed to convince us that the ALJ improperly "ignored" and "rejected" a material limitation when the ALJ both quoted the finding in his final decision and characterized it as "fairly consistent with the record."

2

omission of the workweek limitation findings from the RFC—the same alleged error upon which she bases her second argument. So we address her arguments together: whether the ALJ failed to incorporate (or improperly incorporated) the doctors' MRFCA limitation statement into the RFC.[2]

In relevant part, the ALJ's RFC states that Larkin "can perform simple, routine tasks and follow short, simple instructions." She can also "perform work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days." Larkin "can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required." She can also "deal with occasional changes in the work environment." And while she "has some difficulty working directly with the public," she can "work in jobs that require only occasional exposure to or interaction with the general public."

The relevant portion of Dr. Comrie's MRFCA narrative statement reads as follows: "Clmt [Claimant Larkin] will have some limitation with keeping a regular workweek due to her mood and anxiety sxs [symptoms] but she retains the ability to follow through with routine tasks with reasonable CPP [concentration, persistence,

---

[2] The hypothetical questions the ALJ posed to the vocational expert mirrored the language used in the ALJ's RFC assessment. So the adequacy of those questions also turns directly on the success of Larkin's "rejection" argument.

3

and pace].”[3]  The first clause of this statement about "some limitation" is the part that Larkin argues the ALJ failed to properly incorporate in the RFC.

Whether the ALJ properly incorporated this statement depends on how the statement is interpreted.  When examining the ALJ's interpretation of the MRFCA narrative statement, we consider: (1) whether to read the two clauses of Dr. Comrie's statement as related to each other or independent, and (2) whether to interpret the "limitations" clause as saying that Larkin would need to miss workdays.

Unlike Larkin and our dissenting colleague, we do not read the ALJ's RFC as "ignoring Drs. Comrie's and Kester's findings."  Instead, the ALJ's RFC appears to read the two clauses in the doctors' MRFCA narrative statement as related, meaning Larkin does have "some limitation," *but* that limitation is not so severe that it keeps her from being able to follow through with routine tasks with reasonable concentration, persistence, and pace ("CPP").  It would be strange for the ALJ to explicitly mention the doctors' "workweek limitation" statement when evaluating Larkin's RFC (which he did), yet immediately ignore (as Larkin argues) that same statement while assessing Larkin's RFC in the very same section of the final disability determination.  Consistent with that reading of Dr. Comrie's narrative

---

[3] Because Dr. Kester's narrative statement is identical to Dr. Comrie's and appears to have been based on it, we only discuss Dr. Comrie's statement.  But what we say about Dr. Comrie's statement applies equally to Dr. Kester's.

4

statement, it appears the ALJ did not interpret the first clause in the statement as saying Larkin's limitations were severe enough that they would cause her to miss work regularly. It would be odd for the ALJ to interpret Dr. Comrie's statement to mean Larkin would need to miss work, and then not bat an eye when the vocational expert stated at the reconsideration hearing that Larkin would not be able to maintain competitive employment if she consistently had one unexcused absence from work each month.

This interpretation of Dr. Comrie's statement, which the ALJ *did* incorporate in his decision, is a reasonable one. While Dr. Comrie said Larkin had "some limitation with keeping a regular workweek," nowhere did he quantify what that limitation was—a surprising omission if he meant to say she would miss workdays. Dr. Comrie immediately followed his unspecific "some limitation" statement with a connecting conjunction: "*but* she retains the ability to follow through with routine tasks with reasonable CPP." (Emphasis added.) The ALJ's interpretation of the statement also makes sense because it is consistent with Dr. Comrie's overall disability determination that found Larkin was "Not Disabled."

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), is the most applicable precedent from this Court. Not unlike this case, the ALJ in *Stubbs-Danielson* was faced with physicians' statements like: "claimant has several mental limitations" and "borderline intellectual functioning" and "slow pace in thought and

5

action" and is "moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods," but also that she "showed good persistence" and "retained the ability to carry out simple tasks" and "could perform simple work without public contact." *Id.* at 1171, 1173 (internal quotation marks omitted). The ALJ ultimately "determined that Stubbs-Danielson 'retained the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public.'" *Id.* at 1171 (alteration marks omitted).

Like Larkin does here, the claimant in *Stubbs-Danielson* argued on appeal that "the ALJ failed to account for a number of significant functional limitations assessed by the doctors of record, including difficulties in maintaining pace, and failed to provide reasons for rejecting those doctors' opinions." *Id.* at 1173. This Court rejected that argument, finding the "ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'" *Id.* at 1174. We observed that this "does not, as Stubbs–Danielson contends, constitute a rejection of Dr. McCollum's opinion," and we held that "the ALJ's RFC finding properly incorporated the limitations identified by Dr. McCollum and Dr. Eather, including those related to pace and the other mental limitations regarding attention, concentration, and adaption." *Id.*

6

The result in *Stubbs-Danielson* applies *a fortiori* here, where the nonconcrete workweek "limitations" that Larkin says the ALJ ignored were mentioned by the same doctors that opined—in the same sentence—that "she retains the ability to follow through with routine tasks with reasonable CPP." As in *Stubbs-Danielson*, here the "ALJ translated [Larkin's] condition, including the [workweek] limitations, into the only concrete restrictions available to him"—Drs. Comrie's and Kester's conclusions that "she retains the ability to follow through with routine tasks with reasonable CPP." 539 F.3d at 1174.

Because the ALJ's reading of Dr. Comrie's MRFCA narrative statement is defensible, we defer to it. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009). Even if Larkin's interpretation and the ALJ's interpretation of Dr. Comrie's and Dr. Kester's narrative statements were both equally reasonable, the tie would go to the ALJ under our deferential standard of review. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). The "ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *and for resolving ambiguities*. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (emphasis added & citation omitted).

**AFFIRMED**.

7

*Larkin v. Saul*, No. 18-35772

BERZON, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the Administrative Law Judge ("ALJ") erred in ignoring Drs. Comrie's and Kester's findings regarding Larkin's ability to complete a regular workweek.

Dr. Comrie, the examining psychologist, said three different times, under three different headings, that Larkin would have problems with attendance, punctuality, and completing a regular workweek. The ALJ was required either to incorporate that finding into his assessment of Larkin's residual functional capacity ("RFC") or to explain why he was not doing so. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *see* Social Security Ruling 96-8p, *available at* 1996 WL 374184, at *7. If rejecting the finding, he had to provide, at a minimum, "specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The RFC said nothing about Larkin's ability to complete a regular workweek, and the ALJ did not explain the omission.

The ability to complete a regular workweek is a separate employment qualification from performing simple, routine tasks. A person may be able

1

to perform simple, routine tasks on one day and still be limited in her ability to appear for work the following day because she is suffering from an episode of depression or anxiety. Dr. Comrie's summary sentence on which the majority focuses—"[Larkin] will have some limitation with keeping a regular workweek due to her mood and anxiety [symptoms] but she retains the ability to follow through with routine tasks with reasonable [concentration, persistence, and pace]"—firmly distinguishes between the ability to show up to work regularly and the ability, when at work, to complete tasks. If the ALJ had questions about what the sentence meant, then he should have inquired further. "Disability hearings are not adversarial in nature," and the "ALJ has a duty to develop the record" when it is not clear. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The ALJ further erred in failing to include any limitation in completing a regular workweek in the hypothetical questions he posed to the vocational expert. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and restrictions of the particular claimant." *Valentine*, 574 F.3d at 690 (internal quotation marks omitted). The ALJ asked the vocational expert to assume Larkin could "perform simple, routine tasks and follow short, simple

2

instructions." The ALJ did not mention any limitation in completing a regular workweek. Because the ALJ had given no reason for rejecting Drs. Comrie's and Kester's finding of "some limitation" in that regard, the ALJ erred in omitting the limitation from the hypotheticals. *See id.*

The ALJ's errors were not harmless. In assessing harmlessness, we "may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "Rather, we are constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and alteration omitted).

Critically, here, we cannot review the ALJ's reasons for rejecting the opinions of Drs. Comrie and Kester because the ALJ gave none. Moreover, the vocational expert testified that the claimant would not be able to maintain competitive employment if she consistently had one unexcused absence from work each month. So including Drs. Comrie's and Kester's statements regarding completing a regular workweek in the hypotheticals may well have resulted in a different opinion from the vocational expert as to whether there were jobs in the national economy that Larkin could perform. As a result, the ALJ's errors were not harmless. *See id.*

3

I would reverse the judgment of the district court and remand with instructions to remand to the Commissioner for further proceedings. I respectfully dissent.