NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LUISA ALVAREZ,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.   22-16497

D.C. No. 1:20-cv-01207-SAB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Stanley Albert Boone, Magistrate Judge, Presiding

Submitted November 15, 2023[**]
San Jose, California

Before:  MURGUIA, Chief Judge, and GRABER and FRIEDLAND, Circuit
Judges.

Claimant Luisa Alvarez appeals the judgment affirming the Administrative

Law Judge's ("ALJ") denial of Social Security disability insurance benefits.  We

review the district court's decision de novo.  Tommasetti v. Astrue, 533 F.3d 1035,

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  See Fed. R. App. P. 34(a)(2).

1038 (9th Cir. 2008). We may set aside the denial of benefits only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)). We affirm.

1. The ALJ did not commit reversible error by rejecting Claimant's testimony, even though the ALJ arguably erred in two ways.

First, the ALJ relied on Claimant's haphazard follow-up with her medical appointments, failure to follow recommended courses of treatment and to start medications as prescribed, and sparse treatment history. But the ALJ did not explore Claimant's assertion that financial instability and lack of health insurance were responsible for her inconsistent medical treatment during the relevant period. See Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999), ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.").

That error was harmless for two reasons: (a) Claimant's testimony about her financial instability and lack of health insurance is inconsistent with evidence in the record; and (b) substantial evidence supports the ALJ's other reasons and conclusions regarding the credibility of Claimant's testimony. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining the harmless error analysis); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence

supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" (citation omitted)), superseded on other grounds by 20 C.F.R. § 404.1502(a).

a. Claimant's failure to follow prescribed treatment plans and medications dates as far back as May 2011. During a follow-up visit to the Stanford Hospital, the treating physician, Dr. Yingzhong Tian, noted that Claimant returned to the office with her "usual pain complaints," but had neither made a physical therapy appointment nor started on Neurontin as prescribed two months earlier. During that visit, Dr. Tian "re-emphasized with [Claimant] the need to obtain a physical therapy evaluation with a goal of being placed on a physical therapy regimen." Dr. Tian and Claimant agreed that, among other actions, Claimant would "make an appointment for physical therapy evaluation" and that she would "follow up in 4-6 weeks." But, during a follow-up visit in September 2011, Dr. Tian noted that Claimant "has had somewhat haphazard follow ups with multiple cancellations in the past," and she had still not "schedul[ed] appointments as discussed or start[ed] medications as described."

When asked by the ALJ in January 2014 about her treatment, prescribed medications, and physical therapy, Claimant stated that "there wasn't enough money to pay for medical bills" following her car accident in or about 2009, that "they took away [her] Medi-Cal, and [she doesn't] have insurance," and that she

had not tried physical therapy as recommended by her doctor because "[she doesn't] have insurance." The record shows, however, that Claimant was, in fact, insured at the time that many of the recommended courses of treatment and medications were prescribed. Notably, Claimant filled various prescriptions and had health coverage with Medi-Cal at numerous points through at least August 2012. Thus, there is evidence in the record to support the ALJ's finding that Claimant failed to follow some prescribed courses of treatment during the relevant period, even when she had health coverage.

b. The ALJ provided other valid reasons for discounting Alvarez's testimony, and substantial evidence supports the ALJ's conclusions. Specifically, Claimant engaged in part-time employment in or about 2017 and 2018. Her work consisted of "helping a mother and her child, getting them medication and taking them to their medical appointments." Claimant also "help[ed] them organize or put away their food in the refrigerator" and pushed the mother in her wheelchair to her appointments. Claimant testified that pushing the wheelchair became difficult over time because of pain in her back. But she also testified to another reason why her job came to an end: the "mother was admitted to the hospital."

Despite testifying that her symptoms worsened over time, Claimant engaged in part-time work after the date last insured, a permissible reason for the ALJ to discount her testimony about the severity of her symptoms. See Molina, 674 F.3d

4

at 1113 (noting that an ALJ may discredit a claimant's testimony when the claimant participates in everyday activities involving "capacities that are transferable to a work setting").

Second, the ALJ improperly speculated by stating that the medical records should have included notes "on the issue of muscular atrophy" if Claimant's condition were "as pronounced as [she] contends." See Tommasetti, 533 F.3d at 1042 (noting that an ALJ may not rely on his "own speculation"). But that error, too, is harmless. It is clear from reading the decision as a whole that the ALJ's passing reference to this issue—consisting of a single sentence in an exhaustive analysis—did not affect the outcome.

2. The ALJ did not err in giving little or limited weight to the opinions of Claimant's treating physicians, Drs. Karthikeya Devireddy and Krisknia Polasa, and to the opinion of an examining physician, Dr. Dale Van Kirk. An ALJ may discount the contradicted opinions of treating and examining physicians so long as the ALJ provides "'specific and legitimate reasons' supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted).[1]

---

[1] Claimant filed her claim before 2017. Accordingly, the applicable pre-2017 standard permits an ALJ to reject the contradicted opinion of a treating or examining physician so long as the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830–31).

In support of his determination, the ALJ cited inconsistencies between the physicians' opinions and the medical evidence, including the treating physicians' own progress notes and examination findings. See Tommasetti, 533 F.3d at 1041 (noting that an inconsistency between a physician's opinion and the medical record constitutes a specific and legitimate reason to discount the opinion). Throughout Claimant's progress notes and physical examinations, Dr. Devireddy reported mostly normal results consisting of no "general distress," except for some neck pain and tenderness and some arm numbness. Similarly, Dr. Polasa reported generally normal findings in many of her physical examinations of Claimant, except for some joint and back pain, ankle swelling, and depression. But the opinions of Drs. Devireddy and Polasa allege that Claimant had a more severe impairment than is supported by their own notes. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (noting that an ALJ permissibly discounted the treating physician's opinion where, among other factors, the examination notes did not include "the sort of description and recommendations one would expect to accompany a finding" of disability). The ALJ also permissibly relied on the long gap in time between Dr. Van Kirk's opinion and Claimant's date last insured.

3. The ALJ did not err by assigning limited weight to the lay testimony provided by Claimant's husband, son, and friend. The ALJ considered the lay testimony that "describ[ed] symptoms that are generally in accord with the overall

6

record," but he discounted the testimony to the extent that it "lack[ed] objective foundation and guidance which would be relevant in evaluating the degree to which impairments impact the claimant's function." The ALJ's decision is not a model of clarity. But we read his decision to mean that he accepted the lay testimony only to the extent that it was consistent with the record, which is a "germane" and proper consideration. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Bayliss v. Barnhart, 427 F.3d. 1211, 1218 (9th Cir. 2005) (holding that the ALJ properly accepted lay testimony that was "consistent with the record . . . and the objective evidence in the record" and properly "rejected portions of [the] testimony that did not meet this standard").

4. Finally, the ALJ did not err in his Step 5 determination when, considering Claimant's age, education, work experience, and the testimony of the vocational expert, he concluded that Claimant could perform a significant number of jobs in the national economy. Claimant merely "restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony[,] . . . the testimony of medical experts," and the lay witnesses' testimony. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008). For the reasons noted above, the ALJ did not err. Because the ALJ permissibly discounted some physicians' opinions, Claimant's testimony, and the lay witnesses' testimony, the hypothetical given to the vocational expert was

7

proper.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of [claimant]'s treating physicians, which were permissibly discounted."); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.").

**AFFIRMED.**